UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| THE LAW FUNDER, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:14-CV-00981 |
| | § | |
| SERGIO MUNOZ, JR., *et al*, | § | |
| | § | |
| Defendants. | § | |

### ENTRY OF DEFAULT JUDGMENT

The Court now considers Plaintiff's motion for entry of judgment against Defendants.[1] After duly considering the record and authorities, the Court **GRANTS** Plaintiff's motion.

**I.   BACKGROUND**

This case was filed in federal court on December 2, 2014,[2] but delayed largely due to Defendants' refusal to cooperate in the discovery process. Plaintiff filed a motion for sanctions on October 21, 2016,[3] and the Court granted the motion on December 9, 2016, striking Defendants' pleadings in their entirety.[4] Plaintiff filed the instant "motion for entry of judgement against defendants" on December 12, 2016.[5] The Court subsequently ordered the Clerk of Court to enter default. Though the motion is entitled "opposed," Defendants have failed to file a response, and more than twenty-one days have elapsed since the filing of Plaintiff's motion. The motion is thus unopposed.[6]

---

[1] Dkt. No. 60.
[2] Dkt. No. 1.
[3] Dkt. No. 54.
[4] Dkt. No. 59.
[5] Dkt. No. 60.
[6] *See* LR 7.3 & 7.4 of the Local Rules of the United States District Court for the Southern District of Texas.

## II. LEGAL STANDARD

Default judgment is governed by Federal Rule of Civil Procedure 55. The applicable procedure and nomenclature regarding Rule 55 has been set forth by the Fifth Circuit as follows:

> A *default* occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules. An *entry of default* is what the clerk enters when the default is established by affidavit or otherwise. After defendant's default has been entered, plaintiff may apply for a judgment based on such default. This is a *default judgment*.[7]

The mere fact that a defendant has defaulted does not mean that a plaintiff is entitled to default judgment.[8] Consequently, a court can only enter default judgment after it determines that there exists "a sufficient basis in the pleadings for the judgment to be entered."[9] Put differently, a Court cannot award a plaintiff victory on meritless claims, even if the defendant defaulted, and conversely, a court must determine that the plaintiff's claims have merit before entering default judgment.

Generally, by his default, a defendant admits the plaintiff's well-pleaded allegations of fact.[10] "Unlike questions of actual damage[s], which must be prove[n] in a default situation, conduct on which liability is based may be taken as true as a consequence of the default."[11] To be clear, default judgment only establishes liability; Plaintiff must still prove the amount of damages.[12] Rule 55(b)(2) specifies that the Court may hold a hearing if necessary to determine the amount of damages,[13] and the Fifth Circuit often requires district courts to hold evidentiary

---

[7] *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) (emphasis in original).
[8] *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).
[9] *Id.*
[10] *Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir.2002) (quoting *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975)).
[11] *Frame v. S-H, Inc.*, 967 F.2d 194, 205 (5th Cir. 1992).
[12] *See United States for Use of M–CO Const. v. Shipco General,* 814 F.2d 1011, 1014 (5th Cir. 1987).
[13] Fed. R. Civ. P. 55(b)(2)(B).

hearings on the damages inquiry to effectuate due process.[14] Finally, Rule 55 requires that a defendant be served with written notice of the application for entry of default judgment at least "7 days before the hearing," if that defendant has appeared in the case.[15]

### III. APPLICATION

In this case, there is no need to hold any initial hearing with regard to defendants' liability, and Plaintiff has certified that it gave Defendants notice of its motion for entry of default judgment on December 12, 2016,[16] far more than seven days before the issuance of this opinion, and more than twenty-one days before submission of the motion. Thus, Plaintiff has provided Defendants proper notice of its motion. The Court now turns to its analysis of the merit of Plaintiff's claims against Defendants.

In its complaint, Plaintiff alleges legal malpractice, negligence, and breach of fiduciary duty.[17] Texas Courts have recognized that when, as here, these claims are brought together based on the same factual allegations, they constitute nothing more than a single claim for legal malpractice.[18] Thus, the Court only analyzes Plaintiff's legal malpractice claim. To prevail on a legal malpractice claim, a plaintiff must show "that (1) the attorney owed the plaintiff a duty, (2)

---

[14] *Frame*, 967 F.2d at 204.
[15] Fed. R. Civ. P. 55(b)(2).
[16] Dkt. No. 60 at pp. 5–6.
[17] Dkt. No. 1 at pp. 5–8.
[18] *See e.g., Isaacs v. Schleier*, 356 S.W.3d 548, 556 (Tex. App.—Texarkana 2011, pet. denied) ("Texas law, however, does not permit a plaintiff to divide or fracture her legal malpractice claims into additional causes of action."); *Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 924 (Tex. App.—Fort Worth 2003, pet. denied) (noting that in general, courts do not allow a case arising out of an attorney's alleged bad legal advice or improper representation to be split out into separate claims for negligence, breach of contract, or fraud, because the "real issue remains one of whether the professional exercised that degree of care, skill, and diligence that professionals of ordinary skill and knowledge commonly possess and exercise."); *Sledge v. Alsup*, 759 S.W.2d 1, 2 (Tex.App.—El Paso 1988, no writ) ("Nothing is to be gained by fracturing a cause of action arising out of bad legal advice or improper representation into claims for negligence, breach of contract, fraud or some other name. If a lawyer's error or mistake is actionable, it should give rise to a cause of action for legal malpractice with one set of issues which inquire if the conduct or omission occurred, if that conduct or omission was malpractice and if so, subsequent issues on causation and damages."); *Home Advantage, Inc. v. Shaw*, 07-97-0309-CV, 1998 WL 487042, at *1 (Tex. App.—Amarillo Aug. 19, 1998, no pet.) ("we treat these actions [conflict of interest and breach of fiduciary duty] together as an action for legal malpractice.").

the attorney breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) damages occurred."[19] These elements are satisfied in this case because Defendants, by virtue of their default, have admitted Plaintiff's well-pleaded allegations which in turn satisfy each element.

Plaintiff has alleged sufficient facts to support prong one—the existence of a duty—because it states in its complaint: "In or about May 2011, Law Funder retained the services of Defendants to represent them in the Garcia Divorce Case."[20] The Texas Supreme Court has determined that "[a] lawyer in Texas is held to the standard of care which would be exercised by a reasonably prudent attorney."[21] Moreover, Texas courts recognize that as a matter of law, the attorney-client relationship gives rise to a special "fiduciary" relationship.[22] This relationship endows the lawyer with special duties towards the client, including: "abundant good faith," "absolute perfect candor, openness and honesty, and the absence of any concealment or deception."[23] Thus, Defendants had these duties towards Plaintiff by virtue of the existing attorney-client relationship.

Plaintiff has also alleged sufficient facts to support prong two—breach of duty. Texas Courts have specifically held that a lawyer's fiduciary duty is commonly breached by "failure to disclose conflicts of interest . . . [and] placing personal interests over the client's interests."[24] Here, Defendant Munoz had a "corporate association"[25] with Judge Contreras, who presided over

---

[19] *Harrison v. Taft, Stettinius & Hollister, L.L.P.*, 381 Fed. Appx. 432, 434 (5th Cir. 2010).
[20] Dkt. No. 1 at p. 4.
[21] *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989).
[22] *Goffney v. Rabson*, 56 S.W.3d 186, 193 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).
[23] *Goffney*, 56 S.W.3d at 193; see also *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 276 (Tex. 2012) ("the conduct of lawyers "should be characterized at all times by honesty, candor, and fairness.").
[24] *Id.*; see also *Jackson Law Office, P.C. v. Chappell*, 37 S.W.3d 15, 22–23 (Tex.App.—Tyler 2000, pet. denied); *Cantu v. Butron*, 921 S.W.2d 344, 349–50 (Tex.App.—Corpus Christi 1996, writ denied); *Perez*, 822 S.W.2d at 263–66; *Avila v. Havana Painting Co.*, 761 S.W.2d 398, 399–400 (Tex.App.—Houston [14th Dist.] 1988, writ denied).
[25] Dkt. No. 1 at p. 2.

the proceedings in which Defendants represented Plaintiff.[26] This created a conflict of interest: Defendants wanted to represent and accrue legal fees from Plaintiff even though a reasonable person in Defendants' position would know that if the corporate association was discovered, the judge might be recused or disqualified, and if disqualified, all the rulings favorable to Plaintiff would be thrown out. The existence of Defendants' corporate association with Judge Contreras thus created a duty for Defendants to be *honest* with Plaintiff from the beginning about this relationship, so Plaintiff could make an informed decision about whether or not to retain Defendants as counsel of record. However, Plaintiff alleges that "at no point did Defendants advise Law Funder that they had a pre-existing business relationship or a professional corporation, Contreras & Munoz, P.C., with Judge Contreras."[27] Moreover, Plaintiff alleges that Defendants never withdrew as counsel because "Defendants continued their representation of Plaintiff"[28] at least through "late December 2012."[29] Thus, Defendants breached their fiduciary duties of "absolute good faith" and "perfect candor, openness and honesty, and the absence of any concealment or deception"[30] to Plaintiff.

Moreover, Plaintiff has sufficiently pled actual damages. Plaintiff states: "The Defendants (sic) professional relationship and corporate association with Judge Contreras ultimately led to Judge Contreras' disqualification. As a result . . . all of the orders entered by Judge Contreras were nullified and voided, which reversed years of litigation by Plaintiff that cost Plaintiff over a million dollars."[31] The reversed litigation and the wasted expense to Plaintiff for over a million dollars in legal fees constitute actual damages.

---

[26] *Id.*
[27] Dkt. No. 1 at p. 4.
[28] Dkt. No. 1 at p. 5.
[29] *Id.*
[30] *Goffney*, 56 S.W.3d at 193
[31] *Id.*

Furthermore, Plaintiff sufficiently pleads proximate causation: "The Defendants were aware that this relationship would create a conflict of interest,"[32] and "Defendants were further aware that this relationship could lead to disqualification of Judge Contreras."[33] Indeed, any reasonable person in Defendants' position would know that failing to disclose or withdraw from the conflict in question could lead to disqualification of Judge Contreras, nullification of his orders, and the consequent waste of Plaintiff's time and paid attorney's fees. In sum, the Court finds Plaintiff's claim of legal malpractice against Defendants established as a matter of law.

### IV.     Holding

The Court hereby **GRANTS** judgment for Plaintiff against Defendants, and finds Defendants jointly and severally liable. The parties are hereby **ORDERED** to appear for a hearing on **March 14, 2017 at 9:00 A.M**. for purposes of establishing damages and also reasonable attorney's fees in light of the Court's previous order imposing sanctions.[34] Plaintiff's motion for summary judgment[35] is **DISMISSED AS MOOT**.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 2nd day of February, 2017.

_____
Micaela Alvarez
United States District Judge

---

[32] *Id*.
[33] *Id*.
[34] *See* Dkt. No. 59 at pp. 7–8.
[35] Dkt. No. 58.